UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Theresa Lanza | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants | |
| Fawn Schanz
James Turken | | Judd Serotta | |

**Proceedings:** **DEFENDANT'S MOTION TO DISMISS COUNTS THREE THROUGH THIRTEEN OF PLAINTIFF'S COMPLAINT**
(filed September 28, 2012)

## I.   INTRODUCTION

On June 29, 2012, plaintiff Audigier Brand Management Group, LLC, filed suit against defendant Rhita Perez, a/k/a Ruth Perez, a/k/a Ruth Kraif. Dkt. No. 1. Plaintiff primarily alleges that defendant engaged in an unlawful scheme to defraud plaintiff of royalties owed under a trademark license agreement between the two parties. Compl. ¶ 3. Plaintiff asserts the following claims for relief under California and federal law: (1) breach of written agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; (4) fraudulent misrepresentation; (5) false promise; (6) fraudulent concealment; (7) negligent misrepresentation; (8) trademark infringement pursuant to 15 U.S.C. § 114(1); (9) false designation of origin under 15 U.S.C. § 1125(a)(1)(A); (10) common law trademark infringement; (11) California Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 et seq.; (12) injunctive relief; and (13) accounting.

On September 28, 2012, defendant filed a motion to dismiss counts three through thirteen of plaintiff's complaint. Dkt. No. 11. Plaintiff opposed the motion on October 15, 2012. Dkt. No. 12. Defendant replied on October 22, 2012. Dkt. No. 18. On November 5, 2012, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

## II.     BACKGROUND

Plaintiff's allegations are as follows. Audigier Brand Management is the owner of the trademarks "Christian Audigier" and "C A" (collectively, the "Audigier Trademarks") in the United States and foreign countries for use with numerous types of consumer apparel. The Christian Audigier brand specializes in "up-scale urban streetwear" bearing the Audigier Trademarks, Compl. ¶¶ 9–10, and through extensive advertising and promotion, the marks have acquired "a strong secondary meaning" and are "highly distinctive and famous." Compl. ¶¶ 15–18.

Plaintiff further alleges that defendant is the alter ego of Mood Signatures, LLC, ("Signatures") a California company that defendant created. Id. ¶ 5. In or around November 2008, plaintiff and defendant discussed entering into a licensing agreement, whereby Signatures would design, market, and sell Christian Audigier brand apparel. Id. ¶ 19. Defendant orally represented during subsequent licensing negotiations that "the desired license was solely for. . . Mood Signatures," and promised plaintiff that Mood Signatures would "fully and accurately report its sales of Christian Audigier brand products and pay any royalties." Id. ¶ 20. However, plaintiff "is informed and believes" that defendant in fact had no intention of abiding by the terms of the license nor paying any royalties to plaintiff. Id. ¶ 21. Defendant instead intended to use the license to obtain a United States business visa and to divert her profits (from Signatures) to France. Id.

Plaintiff then entered into a written trademark license agreement with Signatures in February 2009. Id. ¶ 22; Ex. D (the "Agreement"). Defendant was not herself a party to this contract. The Agreement grants Signatures an "exclusive, non-assignable, non-transferable license. . . to use, manufacture, [and] sell" certain products bearing the Audigier Trademarks, including 2-piece velour jogging suits, among other items. Id. Ex. D ¶¶ 2.1.1, 15.1, 15.3. The Agreement requires the payment of various royalty amounts, both guaranteed and based on Signatures's retail sales of licensed merchandise. Id. Ex. D ¶¶ 4.1.2, 14.1. Signatures is further required to maintain accurate accounting records and provide quarterly "Royalty Statements" to plaintiff. Id. Ex. D ¶¶ 4.2, 5.1.

In addition, the Agreement sets forth various limitations on subcontracting and third-party involvement. Section 6.2.2 allows Signatures to subcontract with third-parties to distribute the licensed products provided that: (1) Signatures notifies plaintiff in advance; and (2) Signatures obtains a written agreement with the third-party that is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

provided to and accepted by plaintiff. Id. Ex. D. Pre-approval is not required for affiliated entities of the licensee, i.e., Signatures. Section 15.1 prohibits the assignment, delegation, sale, or transfer by Signatures of any and all rights and duties under the Agreement without the prior written consent of plaintiff. Id. Similarly, section 15.3 prohibits the sublicensing of any rights under the Agreement without the prior written consent of plaintiff. Id.

Plaintiff alleges that since February 2009, defendant, on behalf of Signatures, has "knowingly and intentionally disregarded. . .[the] obligations of Mood Signatures" under the Agreement in various ways. Compl. ¶ 34. This includes the failure to pay guaranteed royalties and advertising royalties as set forth in the Agreement. Id. ¶¶ 35–36. Plaintiff demanded payment pursuant to the Agreement multiple times in January 2012, but neither Signatures nor defendant made the requested payments. Pursuant to its rights under sections 11.1.1 and 12.4 of the Agreement, plaintiff then terminated Signatures's license and demanded payment of all past and future unpaid royalties. Id. ¶ 39.

Plaintiff further contends that defendant personally left Signatures undercapitalized, by withdrawing capital from Signatures to finance a separate business operation in France, Mood Coutures ("Coutures"). Id. ¶ 42. Defendant was the president and sole member of Coutures. According to plaintiff, the purpose of this company was to impermissibly sell licensed products without plaintiff's knowledge or consent, and to thereby avoid paying royalties owed under the Agreement. Id. ¶ 44. Defendant sold licensed products abroad through Coutures during the operation of the agreement, without reporting any sales to plaintiff or paying any royalties. Id. ¶ 46. Moreover, defendant did submit royalty reports on behalf of Signatures, but made no mention of any sales from Signatures to Coutures, nor otherwise reported any sales by Coutures. Id.

In February 2012, plaintiff initiated arbitration proceedings against Signatures and defendant in an attempt to collect its alleged damages, but defendant refused to arbitrate any claims asserted against her in her individual capacity. Id. ¶ 40. This suit followed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

  As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

  **B. Fed. R. Civ. P. 9(b)**

  Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

  A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

**IV.   ANALYSIS**

   **A.   Fraud Claims**

Plaintiff alleges that defendant made various representations during and after contract negotiations with the intent to defraud plaintiff. Compl. ¶ 71. This includes defendant's alleged statements that she desired a license solely for Signatures' use, that Signatures would abide fully by the terms of any license it received, and that all the royalty reports she signed contained complete and accurate information regarding Signatures' net sales. Id.; see also id. ¶ 80 (defendant's promises to abide by each and every term of the license). Plaintiff alleges that had it been aware of defendant's alleged fraudulent acts, it would not have entered into a license with Signatures, nor continued in its licensing relationship with Signatures for as long as it did. Id. ¶ 74. Based on this common core of allegations, plaintiff brings fraud claims for false promise, fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment.

Defendant argues that plaintiff's fraud claims fail on a number of grounds. First, defendant argues that plaintiff fails to plead a viable fraud in the inducement theory. Second, defendant argues that because none of defendant's alleged conduct violated any independent duty arising under tort law, plaintiff's claims are barred by the economic loss rule. Third, defendant argues that plaintiff has failed to plead all of its fraud claims with specificity, as required by Fed. R. Civ. P 9(b).

To state a claim for fraud, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996). False promise or promissory fraud is a "subspecies" of fraud, and as relevant here, is a viable claim "where a defendant fraudulently induces the plaintiff to enter into a contract." Id. (defining promissory fraud as a promise that is made without the intent to perform).

Not all purported fraud related to a contractual relationship between two parties is actionable, however, because of the economic loss rule. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988 (2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

Under the economic loss rule, purported tort claims related to the performance of a contract are viable only where "the duty that gives rise to tort liability is either *completely independent* of the contract or arises from conduct which is both intentional and intended to harm." Id. at 989–90 (emphasis added). Otherwise, every intentional breach of a contract could potentially give rise to a claim in tort, collapsing the distinction between contract and tort law. Further, even where both contract and tort claims are available, "any overlap between damages recoverable in tort and damages recoverable in contract [are] limited by the rule against double recovery." Lazar, 12 Cal. 4th at 649 (1996). Accordingly, many courts have applied the economic loss rule to bar recovery in tort where "the damages [a] plaintiff seek[s] are the same economic losses arising from the alleged breach of contract." Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc., 629 F. Supp. 2d 1135, 1146 (E.D. Cal. 2009).

  First, the Court finds that plaintiff has not adequately pled a viable fraudulent inducement theory. Plaintiff's only allegations relating to this theory are that defendant did not intend to comply with the license agreement, but falsely promised plaintiff's representatives that she would during their contract negotiations. See, e.g., Compl. ¶¶ 70–78. These allegations are insufficient under Rule 9(b), which requires plaintiff to plead its allegations of fraud with specificity, even where plaintiff offers only circumstantial evidence of defendant's intent. See Hsu v. OZ Optics, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (finding that a "plaintiff must point to facts which show that defendant harbored an intention not to be bound by the terms of the contract at formation. . ."); Jhaveri v. ADT Sec. Services, Inc., 2:11-CV-4426, 2012 WL 843315, *4 (C.D. Cal. Mar. 6, 2012) ("fraudulent intent cannot be proven. . . by simply pointing to the defendant's subsequent failure to perform as promised") (citations omitted). Accepting plaintiff's allegations as sufficient would potentially turn every breach of contract claim into one of fraud as well, "so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." Id. at *5 (citations omitted). As such, plaintiff's allegations of false promises are insufficiently particular to satisfy Rule 9(b), because plaintiff offers no underlying facts on which its beliefs are founded—other than allegations relating to defendant's post-agreement conduct.[1]

---

[1] The most plaintiff offers is its further assertion that it "is informed and believes" defendant intended to use the Audigier license to obtain a United States business visa and to divert her profits (from Signatures) to France. See Compl. ¶ 21. The former assertion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

Accordingly, plaintiff's claims for fraudulent misrepresentation, false promise, and negligent misrepresentation must fail, as all of these claims are premised on plaintiff's inadequately pled theory of fraudulent inducement.[2]

    In addition, the Court finds that plaintiff fails to adequately state a claim for fraudulent concealment. In Robinson, the California Supreme Court considered whether intentional misrepresentation or fraud claims related to the performance of a contract were barred by the economic loss doctrine, 34 Cal. 4th 979 (2004). Robinson, a helicopter manufacturer, bought helicopter parts from Dana, the defendant and a parts supplier over a number of years without incident. Id. at 984–85. However, for a brief period of time, Dana changed its manufacturing procedures without informing Robinson of this material change. Id. at 985–86. During this time, Dana continued to provide certificates to Robinson indicating that no change had been made to its manufacturing process; manufacturing changes were prohibited by the parties' agreement without Robinson's consent. Id. at 986. Robinson's fraud claims were premised on Dana's: (1) provision of false certificates; (2) failure to provide serial numbers related to failed products; and (3) knowing concealment of certain material facts from Robinson. Id. at 990. The court found that Robinson's tort claims were independent of its breach of contract claims: "But for Dana's affirmative misrepresentations by supplying the false certificates of conformance, Robinson would not have accepted delivery and used the nonconforming clutches over the course of several years, nor would it have incurred the cost of investigating the cause of the faulty clutches." Id. at 990–91. As such, Dana's fraud (providing false certificates) was independent of the contractual breach (providing the nonconforming clutches). Id. at 991. The court also noted that its holding was

---

is insufficient without any factual support; the latter allegation only concerns defendant's allegedly deficient contractual performance. Cf. Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1042 (9th Cir. 2010). As the California Supreme Court has noted, evidence supporting a fraudulent inducement claim may include "such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 30 (1985).

    [2]Plaintiff is correct that the economic loss rule does not necessarily bar these claims—but only where these claims are adequately pled under Rule 9(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

limited to situations where a defendant's fraudulent conduct potentially "expose[s] a plaintiff to liability for personal damages independent of the plaintiff's economic loss." Id. at 993.

Here, plaintiff alleges that defendant breached her duty to provide plaintiff with full and accurate royalty reports by (1) failing to disclose sales of licensed product by Coutures and (2) intentionally omitting from Signatures' royalty reports certain sales throughout the contractual period. Compl. ¶ 88. Defendant (through Signatures) had a duty to provide "accurate and complete records of account" including the provision of accurate royalty statements. See Compl. Ex. D, ¶¶ 4.2 (royalty statements), 5.2 (accurate records). As in Robinson, defendant here allegedly breached this duty by intentionally providing fraudulent reports. However, unlike in Robinson, plaintiff does not allege that it suffered any damages independent of its economic loss, let alone any liability for "personal damages." See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1183 & n. 23 (C.D. Cal. 2009) (noting that California intermediate appellate courts have generally read Robinson to apply only in limited circumstances involving exposure of a plaintiff to personal liability). Plaintiff is unable to articulate any theory by which it suffered damage independent from the nonpayment of royalties, other than that it was damaged by its ignorance of defendant's alleged sale of licensed products through Coutures in violation of plaintiff's intellectual property rights. See Opp'n at 17. Not only is this theory of damage not articulated in plaintiff's complaint in regards to plaintiff's fraud claim, the Court finds that plaintiff fails to demonstrate how this theory would entitle plaintiff to any additional measure of damages above and beyond plaintiff's economic losses. Without a viable theory of damage apart from plaintiff's economic losses, plaintiff fails to state an actionable claim for fraud.

**B.   Trademark Claims**

"A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract." MDY Indus., LLC v. Blizzard Ent't, Inc., 629 F.3d 928, 939 (9th Cir. 2010), as amended on denial of reh'g (Feb. 17, 2011). This is because "where the trademark holder has authorized another to use its mark, there [generally] can be no likelihood of confusion"—the prerequisite to any trademark infringement claim. Segal v. Geisha NYC, LLC, 517 F.3d 501, 506 (7th Cir. 2008). However, a licensor can maintain an action for trademark infringement (or related claims) against a licensee when the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

licensee's conduct falls *outside* the scope of the license. See MDY Indus., 629 F.3d at 939. To adequately state a claim for copyright infringement based on breach of a license agreement, a plaintiff must allege that (1) the copying "exceed[s] the scope of the defendant's license" and (2) his complaint is "grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." Id. at 940. Only when there is a "a nexus between the [contractual] condition and the licensor's exclusive rights of copyright" can a licensee's violation of a contract constitute copyright infringement. Id. at 941.

In its trademark claims, plaintiff alleges that defendant acted outside the scope of its rights under the Agreement by selling licensed products bearing the Audigier Trademarks through Coutures, without plaintiff's approval and without paying royalties. Compl. ¶¶ 43–46. These sales fell outside the scope of Signatures' license, plaintiff argues, because plaintiff never approved or authorized Coutures to be a sublicensee or distributor of licensed products. Id. ¶ 45. Plaintiff further alleges that defendant's sale of licensed products through Coutures was likely to cause confusion, mistake, or to deceive the public as to plaintiff's affiliation with Coutures. Id. ¶ 104.

Defendant argues that plaintiff fails to state a valid trademark-related claim in counts eight through eleven of its complaint for three reasons. First, defendant argues that because Signatures was permitted to transfer goods to Coutures under the license agreement, no trademark infringement took place as a matter of law. Reply at 11. Second, that Signatures allegedly failed to pay royalties on any sales of licensed product to Coutures does not give rise to an infringement claim, defendant contends, but only a claim for breach of contract. Id. at 14. Third, even if the transfer of goods to Coutures was not permitted under the license, defendant argues that plaintiff's allegations of a likelihood of confusion are deficient as a matter of law, because Coutures only sold "genuine goods." Id. at 16.

As an initial matter, the Court notes that defendant mischaracterizes plaintiff's allegations. Contrary to defendant's contentions, plaintiff's allegations are not solely premised on the theory that Coutures impermissibly "resold" goods initially sold by Signatures. What plaintiff alleges is that *defendant*—not Signatures—"by and through Mood Coutures, sold Licensed Products without [plaintiff's] knowledge or prior consent." Compl. ¶ 44. Defendant is likely correct that she cannot be held liable for trademark infringement if Signatures sold the licensed products to Coutures first, but defendant ignores the fact that plaintiff alleges that defendant directly caused such sales

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

by Coutures, *without* Signatures involvement. Defendant does not dispute that only Signatures, not Coutures or defendant, had the right to sell licensed goods pursuant to the parties' license agreement, and that any *initial* sales (as opposed to resale) of licensed goods by Coutures would fall outside the scope of the license. Therefore, taking these allegations as true, plaintiff adequately alleges that defendant (through Coutures) acted outside the scope of Signatures' license.[3] Because plaintiff also alleges that consumers were likely to be confused by Coutures' sale of licensed goods, an unlicensed entity, plaintiff has adequately stated claims for trademark infringement and unfair competition.

Defendant's comparison to cases involving the "gray market" importation of goods is unavailing. Defendant is correct in noting that "trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold." NEC Elecs. v. CAL Circuit Abco, 810 F.2d 1506, 1510 (9th Cir. 1987). Thus, trademark infringement is not at issue if such genuine goods bearing a true mark are sold, even if such sale "is without the mark owner's consent." Id. However, defendant's argument is again premised on her contention that Signatures manufactured licensed goods (permissibly), which Signatures then allegedly transferred to Coutures (permissibly). As noted, plaintiff's allegations are broader—that Coutures, a separate entity from Signatures and one without a license, was independently selling Audigier brand goods. This distinguishes plaintiff's allegations from the standard grey market importation case. In Iberia Foods Corp. v. Romeo, 150 F.3d 298, 303 (3d Cir. 1998), for example, all of the products at issue were manufactured pursuant to a valid license, albeit one limited in its territorial reach. There, the only question was whether the plaintiff

---

[3] For similar reasons, the Court finds defendant's argument that plaintiff's allegations state only a claim for breach of contract, based on Signatures' failure to pay royalties, to be unavailing. Plaintiff's allegations are two-fold: (1) Signatures failed to pay royalties on sales of licensed products to Coutures; and (2) Coutures (or Signatures) failed to pay royalties on its own sale of licensed products. If defendant, acting through Coutures, sold licensed products without Signatures involvement, then defendant and Couture's actions fell outside of the scope of the license. As such, a trademark infringement claim may be available. All of the foregoing analysis presumes that defendant could be held personally liable as the alter ego of Coutures and Signatures, per plaintiff's allegations, an issue that is not presently before the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5687-CAS (RZx) | Date | November 5, 2012 |
|---|---|---|---|
| Title | AUDIGIER BRAND MANAGEMENT V. RHITA PEREZ | | |

could bring a trademark claim based on the defendant's importation of goods that were properly licensed for distribution abroad but not in the United States. The Third Circuit found that the plaintiff could bring such a claim, so long as there were "material differences" between the imported and domestic goods, both of which were licensed in their respective territories.

Here, by contrast, plaintiff alleges that defendant (through Coutures) acted beyond the scope of the license granted solely to Signatures, in that Coutures had no valid license at all. In addition, plaintiff alleges that consumers were likely to be confused by Coutures sale of Audigier brand goods. Of course, whether plaintiff can prove that such confusion was likely cannot be determined at this stage of the proceedings, when the Court must accept plaintiff's allegations as true. Therefore, although thinly pled, plaintiff's allegations are sufficient to withstand a motion to dismiss its claims sounding in trademark.

### C. Other Claims for Relief

Plaintiff seeks an accounting, as well as injunctive and declaratory relief by way of its third, twelfth, and thirteenth claims, but these claims are in fact remedies. See Batt v. City and County of San Francisco, 155 Cal. App. 4th 65, 82 (2007). Regardless, the Court finds it appropriate to deny defendant's motion to dismiss these claims at this juncture, because plaintiff may seek these remedies if it succeeds on its underlying claims for relief.

### V. CONCLUSION

In accordance with the foregoing, the Court GRANTS in part and DENIES in part defendant's motion to dismiss Counts three through thirteen of plaintiff's complaint without prejudice. Plaintiff shall have twenty days (20) to file an amended complaint addressing the deficiencies identified herein.

IT IS SO ORDERED.

| | 00 | : | 06 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |